IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NIRAL PATEL, individually and on behalf of all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**7-ELEVEN, INC.,**<br><br>Defendant. | Case No. 1:18-cv-07010<br><br>**Judge Edmond Chang**<br>**Magistrate Maria Valdez** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**7-ELEVEN, INC.'S MOTION TO DISMISS COMPLAINT**

Defendant 7-Eleven, Inc. ("7-Eleven"), by its attorneys, respectfully submits this memorandum of law in support of its Motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to Dismiss Plaintiff's Class Action Complaint (the "Complaint").[1]

## INTRODUCTION

7-Eleven brings this Motion because the single count set forth in Plaintiff's Complaint (for alleged violations of the Illinois Wage Payment and Collection Act (the "IWPCA")) fails as a matter of law under directly applicable Seventh Circuit precedent and the plain terms of the IWPCA. Plaintiff's Complaint is premised on his assertion that 7-Eleven "misclassified" him as an independent contractor and, in doing so, took "improper deductions from wages" for things that franchisees pay for under 7-Eleven's franchise agreement – such as maintenance fees, advertising fees, payroll taxes, etc. (Complaint [Doc. No. 1] at ¶ 22.) According to Plaintiffs, these deductions violate the IWCPA.

---

[1] 7-Eleven's counsel conferred with Plaintiff's counsel regarding this Motion, and Plaintiff's counsel stated that Plaintiff objects to 7-Eleven's Motion.

This claim fails for at least two reasons. First, the Seventh Circuit has made clear that, to state a claim under the IWPCA, a plaintiff must plead that wages were due to him as an employee from an employer *under an employment contract or agreement*. Absent a claim that the plaintiff is entitled to wages from the defendant, any claim that a defendant made improper deductions from wages fails as a matter of law. Nowhere does Plaintiff's Complaint allege that any agreement exists between him and 7-Eleven under which 7-Eleven agreed to pay him any wages. That failure is hardly surprising, because under 7-Eleven's franchise agreement, 7-Eleven does not pay its franchisees *anything* – quite to the contrary, money flows the other way, from the franchisee to 7-Eleven. Because Plaintiff has not pleaded the existence of any agreement under which 7-Eleven agreed to pay him "wages," he cannot pursue a claim for alleged violations of the IWPCA.

Plaintiff's claim also fails because the only entity with whom 7-Eleven actually has a franchise relationship is a corporation (Shanti 11 Corporation), and only "individuals" – as in natural persons – can be "employees" under the IWPCA. Plaintiff's claim hinges on its allegation that 7-Eleven "misclassifies" *its franchisees* as independent contractors. (Complaint ¶ 6.)[2] Plaintiff, however, is not a 7-Eleven franchisee – Shanti 11 Corporation is. Accordingly, to the extent the fees Shanti 11 agreed to pay 7-Eleven under the franchise agreement could ever be deemed "deductions" from "wages," those "deductions" were taken from the "wages" of Shanti 11, not Plaintiff Niral Patel. Because a corporation cannot be an employee under the IWPCA,

---

[2] At various points in his Complaint, Plaintiff uses quotations when referencing the franchise relationship that 7-Eleven has with its franchisees, as if to imply that the relationship is something other than a franchise. If that is the implication of Plaintiff's various quotations, he is mistaken. The term "franchise" has been defined by the Illinois legislature. *See* 815 ILCS 705/3(1). 7-Eleven's relationship with its franchisees satisfies that definition.

and because Plaintiff is not a party to the franchise agreement, Plaintiff has not stated (and cannot state) a claim.

## STATEMENT OF THE CASE

**A.     The Parties and the Franchise Agreement**

7-Eleven is a franchisor of convenience stores. (Complaint at ¶ 11.) On May 17, 2010, Plaintiff entered into a written 7-Eleven, Inc. Individual Store Franchise Agreement (the "Franchise Agreement") pursuant to which he was granted the right to operate a 7-Eleven franchised convenience store at 700 E. Butterfield Road, Suite 300, in Lombard, Illinois (the "Store"). (A true and correct copy of the Franchise Agreement is attached hereto as Exhibit A.)[3] At the same time he entered into the Franchise Agreement, Plaintiff also entered into an Entity Franchise Amendment to Franchise Agreement pursuant to which Shanti 11 Incorporated ("Shanti 11") became the franchisee under the Franchise Agreement.[4] (*See* the Entity Franchisee

---

[3]     Although Plaintiff did not attach a copy of the Franchise Agreement to his Complaint, this Court may nevertheless consider that agreement without converting this motion into a motion for summary judgment. It is well-established that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *accord Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993). Such documents and materials are not matters "outside the pleading" and may properly be considered without converting a motion to dismiss into a motion for summary judgment. *Wright*, 29 F.3d at 1248. Were the rule "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, the Franchise Agreement is both referenced in the Complaint and central to Plaintiff's claims, as Plaintiff specifically alleges that the parties' relationship – which is the essence of this dispute – is "governed by a franchise agreement." (Complaint at ¶ 11.)

[4]     To the extent there is a conflict between Plaintiff's allegations and the Amendment, the Amendment governs. *See Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 888 (N.D. Ill. 2014) (quoting *Massey v. Merrill Lynch & Co., Inc.,* 464 F.3d 642, 645 (7th Cir. 2006) ("When an exhibit conflicts with the allegations of the complaint, the exhibit typically controls.") (internal quotations omitted)).

Amendment to Franchise Agreement (the "Amendment"), which is attached to the Franchise Agreement as Exhibit A.)

In contrast to an employment relationship (where an employer pays an employee for services provided), 7-Eleven does not pay its franchisees anything. Rather, franchisees like Shanti 11 pay 7-Eleven certain fees, including a royalty fee called the 7-Eleven Charge, which is a graduated percentage of the gross profits of the store. (Franchise Agreement at ¶ 10(a).) Assuming the franchisee maintains the requisite minimum Net Worth (usually $15,000), the franchisee is entitled to all of the gross profit of the business that remains after paying the 7-Eleven Charge and store expenses (*e.g.*, payroll, maintenance fees, supplies), all of which are the franchisee's responsibility. (*Id.* at ¶¶ 11, 13(d).)

### B. Plaintiff's Complaint

In his Complaint, Plaintiff alleges that 7-Eleven "misclassifies" its franchisees as independent contractors because franchisees "are in fact employees under Illinois law." (Complaint at ¶ 11.) Plaintiff further alleges that, "because of their misclassification by 7-Eleven as independent contractors, plaintiffs and other so-called 'franchisees' have not received the benefits that inure from the employment relationship under law." (*Id.* at ¶ 21.) In particular, Plaintiff contends that 7-Eleven franchisees "have numerous deductions taken from their pay by 7-Eleven, which constitute improper deductions from wages." (*Id.* at ¶ 22.) Those supposed improper deductions include "payments towards 'franchise' fees, payments for store maintenance, credit card fees, advertising fees, payroll taxes for the store's employees, and the like." (*Id.*)

Based on these allegations, Plaintiff purports to bring a claim (on behalf of himself and "all individuals who worked as franchisees of 7-Eleven at any time between ten years prior to the

EAST\163249607.1    4

filing of this lawsuit and the entry of judgment in this case") for violation of the IWPCA. (*Id.* at pp. 6-7.) Plaintiff seeks, among other things, "damages for all wages or other forms of restitution that are due to Plaintiff and class members because of their misclassification as independent contractors and failure to receive all wages due to them under the Illinois wage laws." (*Id.* at pp. 7-8.)[5]

## ARGUMENT

### I.     The Applicable Standards

The purpose of Rule 12(b)(6) is to allow a defendant to test the legal sufficiency of a complaint. *Adams v. Cavanagh Communities Corp.*, 847 F. Supp. 1390, 1396 (N.D. Ill. 1994). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). To that end, "'[a]llegations in the form of legal conclusions' or 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' are insufficient to withstand a Rule 12(b)(6)

---

[5] This is not the first case to make these allegations against 7-Eleven. Each one that has preceded it has been rejected as insufficient as a matter of law. That includes one that was recently filed against 7-Eleven in the United States District Court for the Central District of California. In *Haitayan v. 7-Eleven, Inc.*, 2018 WL 1626248 (C.D. Cal. Mar. 14, 2018), the court dismissed with prejudice a putative class action complaint which alleged that franchisees had been misclassified under both California law and the Fair Labor Standards Act. That decision is currently on appeal to the Ninth Circuit. *See also 7-Eleven, Inc. v. Sodhi*, 2016 WL 3085897, at *7 (D.N.J. May 31, 2016) (holding that franchisees' counterclaim that he was misclassified under the FLSA failed as a matter of law).

motion to dismiss." *Reed v. Positive Connections, Inc*., 2016 WL 4394166, at *2 (N.D. Ill. Aug. 16, 2016) (quoting *Defender Sec. Co. v. First Mercury Ins. Co*., 803 F.3d 327, 334 (7th Cir. 2015)). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. A Rule 12(b)(6) motion should be granted when, as here, Plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *See id.* at 570.

## II. Plaintiff Has Failed To State A Claim For Violation Of The IWPCA

### A. *Plaintiff Has Failed To Plead That He is Entitled To Any Wages From 7-Eleven*

"The purpose of the IWPCA is to ensure that employers honor the terms of their agreements" with their employees. *Schneider v. Ecolab, Inc.*, 2015 WL 1402615, at *3 (N.D. Ill. Mar. 25, 2015) (Chang, J.). In this way, the IWPCA is limited in its reach. "The IWPCA 'does not grant any independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement.'" *Hughes v. Scarlett's G.P., Inc.*, 2016 WL 454348, at *7 (N.D. Ill. Feb. 5, 2016) (quoting *Enger v. Chicago Carriage Cab Co*., 77 F. Supp. 3d 712, 717 (N.D. Ill. 2014)); *see also Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016) ("[T]he IWPCA provides no substantive relief beyond what the underlying employment contract requires.").

For this reason, to state a claim under the IWPCA, a party must demonstrate that he is "owed compensation from [a defendant] pursuant to an employment agreement." *Enger*, 812 F.3d at 568. If a party cannot show that he is entitled to wages from the defendant pursuant to an employment agreement, any claim that the defendant took improper deductions from those "wages" by requiring the plaintiff to pay fees and expenses fails as a matter of law. *Id.* at 570.

In this case, Plaintiff's Complaint can be searched in vain for *any* allegation that 7-Eleven ever agreed to pay any compensation to Plaintiff for anything. In fact, Plaintiff has failed to adequately plead that he ever had *any* agreement with 7-Eleven, let alone an agreement whereby 7-Eleven agreed to compensate him. The only agreement that does exist – the Franchise Agreement that Shanti 11 and 7-Eleven are parties to – does not obligate 7-Eleven to pay Plaintiff *anything*. In fact, the entire premise of Plaintiff's Complaint is that, under the Franchise Agreement, 7-Eleven charges certain fees (like franchise fees and advertising fees) and forces Plaintiff to bear certain expenses (like maintenance costs, credit card fees, and payroll taxes) that Plaintiff claims he should not have been required to pay. (Complaint at ¶ 22.)

The Seventh Circuit has recently made clear that a claim under the IWPCA cannot exist under these facts. In *Enger v. Chicago Carriage Cab Corp.*, a putative class of taxicab drivers alleged that the defendant taxicab companies violated the IWPCA by improperly classifying the drivers as independent contractors, failing to pay them minimum wage and overtime pay, and taking improper deductions from their wages. *Enger*, 812 F.3d at 567.[6] Although the Seventh Circuit assumed that the parties' relationship was "governed by an implicit employment contract," the Court affirmed the district court's dismissal of the drivers' IWPCA claim because they failed to demonstrate that the defendants owed them wages. It was, the Court noted, "undisputed that the parties' employment agreement did not obligate defendants to compensate the drivers – it only required defendants to make their cabs and medallions available to the drivers so that they could collect tips and fairs from the passengers." *Id*. at 569. Because the drivers failed to show that they were entitled to wages from the defendants, their claims that

---

[6] Plaintiff's counsel in this case was counsel for the plaintiffs in *Enger*.

defendants made improper deductions from their wages "by requiring them to pay fees and expenses" also failed as a matter of law. *Id*. at 570. As the Court observed, "Defendants do not pay the drivers' wages so they cannot be sued for taking deductions from those non-existent wages." *Id*.

This failing aside, the Seventh Circuit rejected as "inaccurate" the drivers' attempt to characterize the "shift fees and other expenses that the drivers voluntarily [paid] to operate defendants' cabs" as deductions. *Id*. Those fees and the expenses, the Court held, were "the consideration offered in exchange for the right to lease a cab and medallion under the parties' implicit agreement." *Id*. Given that the drivers agreed to pay those fees, treating them as deductions constituted an "attempt to use the IWPCA to rewrite the terms of their [implicit] employment agreement." *Id*. Because the IWPCA exists solely to hold employers to the terms of an employment agreement, doing what the drivers asked would, in the Court's words, "turn the IWPCA on its head." *Id*.

That is exactly what Plaintiff's Complaint asks this Court to do. There is no allegation that 7-Eleven agreed to pay *any* wages to Plaintiff for anything. And, under the only agreement that exists – the Franchise Agreement between Shanti 11 and 7-Eleven – the franchisee agreed to pay 7-Eleven the very fees Plaintiff now claims were wrongfully deducted from his "wages." (*See* Franchise Agreement at ¶ 3 (payment of franchise fee), ¶ 20 (maintenance costs), ¶ 21 (payroll taxes), ¶ 22 (advertising fee); Exhibit A.) Treating those fees as "deductions" would not be holding 7-Eleven to the terms of the Franchise Agreement; it would be doing the exact opposite. It would constitute a wholesale re-write of the Franchise Agreement whereby the fees

that *the franchisee agreed to pay to 7-Eleven* in consideration for the grant of the franchise would be transformed into deductions from "non-existent wages."[7]

In sum, Plaintiff's Complaint suffers from the same fatal flaws that led the Seventh Circuit to affirm the dismissal of the drivers' complaint in *Enger*. It should likewise be dismissed, with prejudice. *See Martinez v. Citizen's Taxi Dispatch, Inc.*, 2017 WL 2311231, at *6 (N.D. Ill. May 26, 2017) (dismissing taxi drivers' IWPCA claim because, while the plaintiff alleged that the taxi drivers signed contracts characterizing them as independent contractors, "nowhere in the complaint does he describe or allude to an agreement regarding his compensation"); *Hughes*, 2016 WL 454348, at *7 (dismissing IWPCA claim because, although the plaintiffs identified "a contract purporting to classify each dancer as an independent contractor," they failed to "set forth *any* allegations as to the compensation terms of this contract, let alone allege that the contract promised the requested relief") (emphasis in original); *Reed v. Positive Connections, Inc.*, 2016 WL 4394166, at *2 (N.D. Ill. Aug. 16, 2016) (dismissing IWPCA claim because plaintiffs' allegation that "defendant 'agreed to compensate' them at an hourly rate, or that there existed an 'agreed-upon hourly rate,' is as conclusory as they come").

---

[7] Plaintiff's allegation that 7-Eleven "controls the entire payroll system" (Complaint at ¶ 17) is irrelevant. Even if 7-Eleven processes payroll for Shanti 11, there is no allegation that 7-Eleven itself compensates Plaintiff or any other store employee. In this way, 7-Eleven "is nothing more than an intermediary," which the Seventh Circuit held is insufficient to state a claim under the IWPCA. *Enger*, 812 F.3d at 570 (credit card remittances that taxicab companies sent to drivers did not constitute wages; "the fact that payment sometimes flows through defendants does not alter the reality that the obligation to pay the driver arises from the passenger, and not the taxi company"). *See also Singh v. 7-Eleven, Inc.*, 2007 WL 715488, at *6 (N.D. Cal. Mar. 8, 2007) ("Although 7-Eleven generates paychecks, this is merely a convenience for the franchisees such as Duong, who provided all relevant wage and tax information."); *Hatcher v. Augustus*, 956 F. Supp. 387, 392 (E.D.N.Y. 1997) ("The fact that Southland [the former owner of 7-Eleven] provided a payroll service to [the franchisee] for paying the

*(footnote continued to next page)*

### B. *Shanti 11 Cannot Be An "Employee" Under the IWPCA*

Plaintiff's claim also fails for the plain and simple reason that Niral Patel is not actually a franchisee, and is not a party to any franchise agreement with 7-Eleven. The franchisee is Shanti 11 – the entity he owns – and Shanti 11 cannot by definition be an "employee" under the IWPCA. "The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger*, 812 F.3d at 569. In turn, the Act specifies that "the term 'employee' shall include any *individual* permitted to work by an employer in an occupation." 820 ILCS 115/2 (emphasis added.) While the IWPCA does not define the term "individual," settled rules of construction and a plain reading of the IWPCA as a whole confirm that a corporate entity is not an "individual."

"According to the Illinois Supreme Court, 'the primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.'" *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004) (quoting *People v. Donoho*, 204 Ill.2d 159, 171 (2003)). Because "[t]he best evidence of that intent is the language of the statute," the IWPCA should be interpreted "according to the plain and ordinary meaning of the language.'" *Id*. (applying these principles in interpreting the IWPCA). There can be no question that the term "individual," as used in the IWPCA, refers to a natural person and not a corporation such as Shanti 11. The United States Supreme Court has held that, in interpreting statutory language, the ordinary meaning of the term "individual" is "a human being, a person." *Mohamad v. Palestinian Authority*, 566 U.S. 449, 455 (2012). As the Supreme Court observed, this is the proper definition because, "[a]fter all,

---

*(footnote continued from previous page)*
employees of the [store] does not in any manner create an indicia of control over labor relations" sufficient to create an employment relationship under Title VII).

that is how we use the word in everyday parlance." *Id*. "We say 'the individual went to the store,' 'the individual left the room,' and 'the individual took the car,' each time referring unmistakably to a natural person." *Id*. "[N]o one," the Court held, "refers in normal parlance to an organization as an 'individual.'" *Id*. (observing that the Supreme Court "routinely uses 'individual' to denote a natural person, and in particular to distinguish between a natural person and a corporation") (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Illinois courts and courts in this District have taken the same approach, consistently interpreting the term "individual" in statutes to mean natural persons, not organizations. *See, e.g., Paloian v. Grupo Serla S.A. DE C.V.*, 433 B.R. 19, 40 (Bankr. N.D. Ill. 2010) (although the Bankruptcy Code does not define "individual," "to find that the term 'individual' includes 'corporation' requires a tortured reading"); *In re Prairie Trunk Railway*, 125 B.R. 217, 218 (Bankr. N.D. Ill. 1991) ("only natural persons can recover damages as individuals under" 11 U.S.C. § 362(h), which provides relief to "individuals"); *JB4 Air LLC v. Dep't of Revenue*, 388 Ill. App. 3d 970, 974-75 (2d Dist. 2009) (same).

That this is the proper construction of the term "individual" finds further support in the IWPCA itself. While the term "employee" is strictly limited to "individuals," the IWPCA broadly defines "employer" to include "any *individual*, partnership, association, *corporation*, limited liability company, business trust, employment and labor placement agencies." 820 ILCS 115/2 (emphasis added.) If the legislature intended "individuals" to encompass corporations, it surely would not have listed corporations separately when it defined "employer." *See Mohamad*, 566 U.S. at 456 ("there is a presumption that a given term is used to mean the same thing throughout a statute"); *Wolters v. Johnson*, 114 Ill. App. 3d 546, 552 (1st Dist. 1983) (in construing statutes, courts assume that "the legislature intended all provisions of a particular law

EAST\163249607.1    11

to be construed as a whole" and that "the several provisions of a law are to be consistent and harmonious").

Here, assuming *arguendo* that the fees paid to 7-Eleven under the Franchise Agreement could ever be deemed deductions from "wages," those "deductions" were taken from the "wages" of the franchisee – Shanti 11 – not Plaintiff. Because Shanti 11 is not an "individual," and because only an "individual" can be an employee under the IWPCA, the Plaintiff's claim should be dismissed, with prejudice.[8]

## CONCLUSION

For the foregoing reasons, 7-Eleven's Motion to Dismiss Plaintiff's Complaint should be granted and Plaintiff's Complaint should be dismissed in its entirety with prejudice.

**7-ELEVEN, INC.**

Dated: December 14, 2018        By:     s/ John A. Hughes
                                         One of its Attorneys

Norman M. Leon (#6239480)
John A. Hughes (#6275159)
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
(312) 368-4000

---

[8] In this regard, to the extent Plaintiff actually performed services "as a store manager" at the 7-Eleven Store, he did so for Shanti 11 (the franchisee). Shanti 11 agreed in the Franchise Agreement that all employees of the Store were solely Shanti 11's employees. (Franchise Agreement at ¶ 2; Exhibit A.) Accordingly, to the extent Plaintiff has a claim under the IWPCA for unpaid wages or for any alleged unlawful deductions, his claim would lie against Shanti 11 (the franchisee that operated the Store). He certainly has no claim against 7-Eleven.

## CERTIFICATE OF SERVICE

John A. Hughes, an attorney, certifies that on December 14, 2018, he caused the foregoing MEMORANDUM OF LAW IN SUPPORT OF 7-ELEVEN, INC.'S MOTION TO DISMISS COMPLAINT to be filed electronically with the court. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties. Parties may access this filing through the Court's CM/ECF system.

s/ John A. Hughes
John A. Hughes
