IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NIRAL PATEL, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**7-ELEVEN, INC.,**<br><br>**Defendant.** | Case No. 1:18-cv-07010<br><br>**Judge Edmond Chang**<br>**Magistrate Maria Valdez** |

**7-ELEVEN, INC.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendant 7-Eleven, Inc. ("7-Eleven"), by its attorneys, respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiff's Class Action Complaint ("Complaint").

## ARGUMENT

**A. Both Plaintiff's Complaint And The Franchise Agreement Make Clear That Plaintiff Is Not Entitled To Any Wages From 7-Eleven**

Notwithstanding his efforts to muddy a simple issue, Plaintiff's Opposition actually underscores why his IWPCA claim cannot survive this motion. First, Plaintiff's Opposition actually confirms that his IWPCA claim contravenes the express terms of the only agreement that is alleged to exist in this case – the Franchise Agreement that Shanti 11 Incorporation ("Shanti 11") entered into with 7-Eleven. That is fatal to Plaintiff's claim because, assuming *arguendo* that the Franchise Agreement (which Plaintiff is not even a party to) could be construed as an employment contract, "the IWPCA provides no substantive relief beyond what the underlying employment contract requires." *Enger v. Chicago Carriage Cab Co.*, 812 F.3d 565 (7th Cir.

2016). In other words, the Act "only enforces the terms of an existing contract or agreement." *Enger v. Chicago Carriage Cab Co.*, 77 F. Supp. 3d 712, 717 (N.D. Ill. 2014); *accord Hughes v. Scarlett's G.P., Inc.*, 2016 WL 454348, at *7 (N.D. Ill. Feb. 5, 2016).

In this case, there is no dispute that the only agreement that is pled (or that exists) is the Franchise Agreement that 7-Eleven entered into with Shanti 11. There is likewise no dispute that this agreement expressly obligates the franchisee to pay the very things (a franchise fee, maintenance costs, credit card fees, advertising fees, and payroll taxes) that Plaintiff attempts to characterize as "deductions" from his non-existent wages. (*See* Doc. 1 at ¶¶ 3, 20, 21, 22.) As a result, those "deductions" cannot support an IWPCA claim, because as the Seventh Circuit made clear in *Enger*, the IWPCA cannot be used "to rewrite the terms of [the parties' alleged] employment agreement" to transform fees that a party agreed to pay into unlawful deductions. *Enger*, 812 F.3d at 570. Doing so would turn the IWPCA – which exists solely to hold an employer to the terms of its agreement – "on its head." *Id*.

Plaintiff never disputes (in fact, he never addresses) the fact that the Franchise Agreement expressly required that Shanti 11 pay the fees at issue in consideration for the right to operate a 7-Eleven franchise. In fact, Plaintiff concedes this point on page 4 of his Opposition, where he states that "Plaintiff and 7-Eleven *agreed* that Plaintiff would be compensated for his work for 7-Eleven with a share of the profits of his store (less the numerous fees, deductions, and expenses he is charged)" under the agreement.[1] (Emphasis added.) Under *Enger*, that alone warrants the dismissal of his Complaint. *See Enger*, 812 F.3d at 570 (rejecting as "inaccurate" the drivers'

---

[1] Notably, even if Shanti 11's payment of the fees required under the Franchise Agreement could be characterized as deductions from Plaintiff's "wages," there is not a single allegation in

2

attempt to characterize the "shift fees and other expenses that the drivers voluntarily [paid] to operate defendants' cabs" as deductions).

Second, the Franchise Agreement makes clear that 7-Eleven does not pay Plaintiff anything, as *Enger* held is necessary. *See Enger*, 812 F.3d at 568 (a party pressing an IWPCA claim must show that he is "owed compensation from [a defendant] pursuant to an employment agreement"). In his Opposition, Plaintiff claims that this case is different than *Enger* because, unlike *Enger*, "Plaintiff's pay comes from 7-Eleven," as supposedly alleged in Paragraphs 14, 17 and 18 of the Complaint and as supposedly set forth in the Franchise Agreement. (Opposition at p. 3.) However, none of the allegations Plaintiff relies on actually say *anything* about some alleged agreement to pay him wages. Paragraph 14 of the Complaint alleges that 7-Eleven regularly communicates with franchisees and "frequently" visits franchisees' stores to ensure that 7-Eleven's standards are being met (Doc. 1 at ¶ 14); Paragraph 17 alleges that 7-Eleven (rather than the franchisee) is listed on certain licenses and "calculates payroll and issues checks" (*id.* at ¶ 17);[2] and Paragraph 18 alleges that franchisees are required to make regular deposits, maintain a certain net worth, and are limited to taking draws from their store accounts (*id.* at ¶ 18).[3] This

---

the Complaint that 7-Eleven ever deducted more fees from Plaintiff's share of the profits than those set forth in the Franchise Agreement.

[2] As 7-Eleven noted in its moving papers, there is no allegation that Plaintiff himself is the recipient of these checks, nor is there a claim that any of the fees due under the Franchise Agreement are deducted from paychecks. (*See* Doc. 25 at p. 9 n.7.) Plaintiff never disputes this. More importantly, the money used to pay Shanti 11's employees is Shanti 11's money; 7-Eleven merely processes payroll on its behalf. (*Id.*) *Enger* made clear, and Plaintiff does not dispute, that being an "intermediary" like this is not enough to state a claim under the IWPCA. *Enger*, 812 F.3d at 570.

[3] As the Seventh Circuit recognized in *All EMS Inc. v. 7-Eleven, Inc.*, 181 Fed. Appx. 551, at *1 (7th Cir. 2006), the net worth requirement "represent[s] the franchisee's equity stake in the business at any given time and [is] meant to assure full repayment of 7-Eleven's short-term financing loans [for inventory purchases] in the event of franchisee default."

3

somehow constitutes an agreement to pay wages because, in Plaintiff's view, he "can only access the store account to take any payment for himself based on 7-Eleven's granting him permission to be paid." (Opposition at p. 3.) But even if true, this does not alter the fact that, as in *Enger*, any money Shanti 11 chose to withdraw from the store's account came from revenue derived from the store's sale of products to customers, and not from 7-Eleven.[4] *Enger*, 812 F.3d at 570.

Plaintiff's other claim – that the Franchise Agreement evidences some agreement to pay Plaintiff wages – is equally unfounded. As noted above, the fact that a franchisee takes draws from a store's account does not alter the fact that the draws are based on monies the store generates from selling merchandise, and not "payment" from 7-Eleven for services rendered. More importantly, the portion of the Franchise Agreement Plaintiff relies on (Schedule D) specifically provides that (i) if any draws were to be paid, they would be paid to Shanti 11 (*not* Plaintiff), and (ii) "[t]he Weekly Draw [7-Eleven] agreed to remit to [Shanti 11] on a weekly basis will be $0.00," unless you and we change the Weekly Draw by mutual written agreement." (*See* Doc. 29-1 at p. 63 or 121, ¶ g.) In sum, even if 7-Eleven's Franchise Agreement with Shanti 11 could be deemed an employment agreement between 7-Eleven and Plaintiff, and even if 7-Eleven had agreed to remit a draw to Shanti 11, and even if Shanti's 11's non-existent draw could be

---

[4] Plaintiff argues that "[a]t the very least, the Complaint raises a fact question as to whether 7-Eleven pays Plaintiff, given Plaintiff's allegation that 7-Eleven controls payroll and the store financial accounts." (Doc. 27 at p. 5.) But control over the amount that can be withdrawn from an account is not the same as alleging the existence of an agreement to pay a party for services provided. Indeed, taking Plaintiff's flawed reasoning to its illogical conclusion, every payroll processing company would be the employer of the people whose checks it processes. That is not the law in this or any other jurisdiction.

4

deemed Plaintiff's draw, and even if that draw could be deemed wages, it is impossible to take deductions from nothing. Therefore, there is no basis for Plaintiff's IWPCA claim.[5]

B.  **Shanti 11 Cannot Be An "Employee" Under the IWPCA**

Plaintiff's response to 7-Eleven's argument that a corporate entity such as Shanti 11 cannot be an "employee" under the IWPCA effectively asks this Court to ignore both the plain language of the IWPCA and the fact that Plaintiff is simply not a party to the Franchise Agreement. There is no basis for doing either. As 7-Eleven noted in its moving papers, the IWPCA specifically defines "employee" to include "any *individual* permitted to work by an employer in an occupation." 820 ILCS 115/2 (emphasis added). And, a plain reading of the IWPCA as a whole, along with settled rules of construction, confirm that a corporate entity is not an "individual" under the Act. Enforcing that unambiguous language as written is fatal to Plaintiff's claim because, as noted above, it is undisputed that the only party to the Franchise Agreement (and therefore the only party who paid the fees at issue) is Shanti 11, not Plaintiff. *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005) (if the language of a statute is unambiguous it should be enforced as written).

Plaintiff never addresses this argument. Instead, he claims that honoring the legislature's plain intent will violate some "public policy" that has not been recognized by any case. That

---

[5]  Plaintiff seeks to save his claim by asserting that, despite the terms of the Franchise Agreement, this Court is required to accept as true his assertion (which does not even appear in his Complaint) that "it is 7-Eleven that pays Plaintiff, not vice versa." (Doc. No. 27 at pp. 4-5.) That is incorrect. To the extent there is a conflict between Plaintiff's allegations and the Franchise Agreement (which shows that Plaintiff pays 7-Eleven, and not vice versa), the Franchise Agreement governs. *See Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 888 (N.D. Ill. 2014) (quoting *Massey v. Merrill Lynch & Co., Inc.,* 464 F.3d 642, 645 (7th Cir. 2006) ("When an exhibit conflicts with the allegations of the complaint, the exhibit typically controls.") (internal quotations omitted)).

5

argument is both incorrect and unfounded. First, "[t]he responsibility for the wisdom or justice of legislation rests with the legislature, and courts may not rewrite statutes to make them consistent with the court's idea of orderliness and public policy." *People v. Wright*, 194 Ill. 2d 1, 29 (2000) (citing *Kozak v. Retirement Bd. of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220 (1983)); *accord Anderson v. First Am. Group of Companies, Inc.*, 353 Ill. App. 3d 401, 411 (1st Dist. 2004) (interpreting the IWPCA and holding that "[a] court must not construe a statute to add exceptions or limitations or change the law set forth in the statute so as to depart from the statute's plain meaning.").

Second, 7-Eleven is not arguing, as Plaintiff asserts, for a "bright-line rule that a worker who has incorporated (as many franchisees have) cannot maintain a wage claim." (Doc. 27 at p. 6.) 7-Eleven's only argument is that, consistent with the plain language of the IWPCA, a corporate entity cannot assert a claim under that specific Act. Enforcing that plain language will not limit anyone's right to bring wages claims, as Plaintiff incorrectly asserts. As noted above, the IWPCA "does not grant any independent right to payment of wages or benefits." *Enger*, 77 F. Supp. 3d at 717. Rather, the IWCPA simply "enforce[s] the terms of an existing contract or agreement." *Id.*; *accord Enger*, 812 F.3d at 570 ("the IWPCA provides no substantive relief beyond what the underlying employment contract requires"). Therefore, if a corporation does not receive what it is entitled to under a contract, it does in fact have a remedy – notwithstanding the legislature's determination that it cannot bring a claim under the IWPCA. Its remedy lies in an action to enforce the terms of its contract, which is the exact same thing the IWPCA does.

In an attempt to convince this Court to disregard the plain language of the statute, Plaintiff cites a list of cases (primarily from other jurisdictions) which, he asserts, have held that

6

corporations can be treated as employees under wage laws. Plaintiff notes, for example, that the Tenth Circuit held that the fact that a franchisee had incorporated did not end the court's misclassification inquiry. *Acosta v. Jani-King of Oklahoma*, 905 F.3d 1156 (10th Cir. 2018). However, *Acosta* addressed the issue under the FLSA, which is broadly interpreted "in order to accomplish the remedial purposes of the Act." *Solis v. Int'l Detective & Protective Service, Ltd.*, 819 F. Supp. 2d 740, 747 (N.D. Ill. 2011). The IWPCA, in contrast, is limited in reach, as "claims for compensation under the IWPCA are 'akin to breach of contract actions,' allowing an employee claiming that promised wages have been withheld to require 'that the employer honor his contract.'" *Brand v. Comcast Corp.*, 2013 WL 1499008, at *2 (N.D. Ill. Apr. 11, 2013) (quoting *Nat'l Metalcrafters v. McNeil*, 785 F.2d 817, 824 (7th Cir. 1986)); *see also Cho v. Maru Restaurant, Inc.*, 194 F. Supp. 3d 700, 705 (N.D. Ill. 2016) ("A violation of the FLSA or the IMWL alone, without a corresponding violation of an employment contract or agreement, therefore, cannot establish a violation of the IWPCA."). For this reason, this Court has made clear that cases interpreting other statutes, such as the FLSA, are not persuasive in interpreting the IWPCA. *See Enger*, 77 F. Supp. 3d at 717 ("Plaintiff cites a number of cases from other jurisdictions in support of their interpretation of the IWPCA. None of these cases is persuasive, however, as they do not involve statutes analogous to the IWPCA.").

The other cases Plaintiff cites are no more persuasive and, in fact, generally do not even stand for the proposition for which they are cited. For example, while Plaintiff claims that Judge Wood rejected 7-Eleven's "exact argument in the context of an IWPCA misclassification case" in *Johnson v Diakon Logistics, Inc.*, 2018 WL 1519157 (N.D. Ill. Mar. 28, 2018), the defendant in that case *did not even argue* that a corporate entity could not be an "employee" under the

7

IWPCA. Instead, the defendant argued that the fact that it entered into a written agreement with plaintiff's company foreclosed the possibility that plaintiff could have entered into any other agreement with the defendant. The court rejected *that* argument as "not a winning one" because "a formal agreement between the parties is not required under the IWPCA." *Johnson*, 2018 WL 1519157, at *9.[6]

The only other IWPCA case that Plaintiff cites is *Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016). But like *Johnson*, *Costello* did not even address the argument 7-Eleven raises here: namely, that the language of the statute makes clear that corporate entities cannot be "employees." In *Costello*, the Seventh Circuit considered whether the plaintiffs' IWPCA claims were preempted by the Federal Aviation Administration Authorization Act of 1994 and, if not, whether the district court properly concluded that the plaintiffs failed to show (on their class certification motion) that common issues predominated. Whether corporations could be employees under the IWPCA was not considered, or even mentioned. In fact, the concept of incorporation appears only one time in the opinion, where the Court simply mentions, without discussion, that "[s]ome of [defendant's] couriers are incorporated, while others are not." *Id*. at 1048.[7]

---

[6] Here, Plaintiff specifically alleges that 7-Eleven's relationship with its franchisees is governed by 7-Eleven's franchise agreements, and not any other agreement. (Doc. 1 at ¶ 11.)

[7] Plaintiff cites *Ware v. Industrial Accident Comm'n*, 318 Ill. App. 3d 1117 (Ill. Ct. App. 2000), which concluded that the fact that an employee had incorporated was not dispositive. However, *Ware* addressed a claim under the Illinois Workers' Compensation Act, 810 ILCS 305/1, not the IWPCA. In contrast to the IWPCA, the Workers' Compensation Act defines "employees" as "persons." 805 ILCS 305/1(b)(2). "'Person,' we have recognized, often has a broader meaning in the law than 'individual' [citations omitted], and frequently includes nonnatural persons." *Mohammad v. Palestinian Authority*, 566 U.S. 449, 456 (2012).

8

In this regard, *Costello* is no different than every out-of-state case Plaintiff cites on page 7 of his Opposition: while some of those cases contain passing references to the fact that some alleged employees had incorporated, *none* of them address the significance of that fact or whether that fact impacts their right to pursue claims under the statutes at issue in those cases. "In general, a judicial decision is only authority for the issues that it actually decides, and '[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" *Wiess v. Wal-Mart Stores, Inc.*, 2010 WL 1948187, at *3 (S.D. Ill. May 13, 2010) (quoting *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 936 n.5 (S.D. Ill. 2006)). Because these cases addressed neither the IWPCA nor the issue before this Court, they have no precedential value and should be ignored. *See U.S. v. Daniels*, 902 F.2d 1238, 1241 (7th Cir. 1990) ("Judicial assumptions concerning, judicial allusions to, and judicial discussions of issues that are not contested are not holdings."); *see also U.S. v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) ("a general argument or observation unnecessary to the decision ... is not authoritative").[8]

---

[8] The same holds true for the non-binding, out-of-state cases Plaintiff cites on pages 8-9 of his Opposition, all of which involved different statutes. In fact, the only cases that considered to any degree whether a corporation could be an "individual" (albeit under different statutes) support 7-Eleven's argument. For example, in *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006), the court observed (in an FLSA case) that the term "individual" in the definition of "employee" may not include corporations, but nonetheless permitted corporate entities to be included in the collective action "at [that] time" because "courts construe FLSA definitions liberally." In *Wisconsin Cheese Serv., Inc. v. Dep't of Industry, Labor and Human Relations*, 322 N.W.2d 495 (Wis. Ct. App. 1982), even though there was no dispute that corporations are not individuals, the court disregarded the corporate status of incorporated owners-operators in deciding who could be an employee because there was "[c]redible and substantial evidence in the record" supporting the inference that [the defendant] "encouraged owners-operators to incorporate so that it could escape liability for unemployment compensation contributions." *Id.* at 501. There are no allegations in this case supporting such an inference.

9

The language of the IWPCA is clear and unambiguous.  Entities such as Shanti 11 cannot press claims under the IWPCA.  Because Shanti 11, not Plaintiff, is the only party to the only agreement Plaintiff relies on – and, as a result, the only party from whom any "deductions" could have been taken – Plaintiff's IWPCA claim should be dismissed.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the 7-Eleven's moving papers, 7-Eleven's Motion to Dismiss Plaintiff's Complaint should be granted and Plaintiff's Complaint should be dismissed in its entirety with prejudice.

**7-ELEVEN, INC.**

Dated: January 28, 2019         By:   /s John A. Hughes
                                         One of their Attorneys

        Norman M. Leon (#6239480)
        John A. Hughes (#6275159)
        **DLA Piper LLP (US)**
        444 West Lake Street, Suite 900
        Chicago, Illinois  60606
        (312) 368-4000

## CERTIFICATE OF SERVICE

John A. Hughes, an attorney, certifies that on January 28, 2019, he caused the foregoing 7-ELEVEN, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT to be filed electronically with the court. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties. Parties may access this filing through the Court's CM/ECF system.

s/ John A. Hughes
John A. Hughes

EAST\164356446.1