UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| NIRAL PATEL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 18 C 07010 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| 7-ELEVEN, INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Niral Patel runs a 7-Eleven store under a franchise agreement between 7-Eleven and a corporation that he owns. In October 2018, Patel sued 7-Eleven under the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS § 115, *et seq.*, alleging that he is in reality a 7-Eleven employee under the definition of the Act, and that 7-Eleven has been taking improper deductions from his wages. R. 1, Compl.[1] Patel also filed a preliminary injunction motion seeking to prevent 7-Eleven from terminating his franchise in retaliation for filing this lawsuit. R. 18, Prelim. Inj. Mot. 7-Eleven filed this motion to dismiss, arguing first that Patel has failed to adequately plead that 7-Eleven agreed to pay him qualifying "wages" under the Act, and also that Patel cannot possibly have a viable claim under the IWPCA because it is Patel's

---

[1] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2). Patel is a citizen of Illinois and 7-Eleven is a Texas corporation with its primary place of business in Texas. Compl. ¶¶ 5, 7. The individual amount in controversy is more than $75,000, and the class-action claims exceed $5 million. *Id.* ¶ 9.

*corporation*—not Patel himself—that has the franchise agreement with 7-Eleven. *See generally*, R. 24, Mot. Dismiss; R. 25, Def.'s Br.[2] For the reasons explained below, 7-Eleven's motion to dismiss is granted, and Patel's motion for a preliminary injunction, R. 18, is denied.

**I. Background**

For the purposes of this motion, the Court accepts as true the allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). 7-Eleven stores are operated under a franchise model. Compl. ¶ 11. In around 2010, Patel purchased a 7-Eleven franchise for an up-front fee and has been running a franchise store in Illinois since then. *Id.* ¶¶ 5, 11. According to 7-Eleven, when Patel first purchased the franchise, he "entered into an Entity Franchise Amendment" to the franchise agreement, which made a corporation called Shanti 11 the franchisee. Def.'s Br. at 3; R. 25-1, Mot. Dismiss Exh. A, Franchise Agmt. at 90-101.[3] Patel explains that he is the sole owner, president, secretary, and treasurer of Shanti 11. R. 27, Pl.'s Resp. at 5 n.2; Mot. Dismiss Exh. A, Franchise Agmt. at 95-96 (Patel signing the Amendment as "President/Secretary/Treasurer" and stating that he owns 100% of the interest in the franchise).

---

[2]Although Federal Rule of Civil Procedure 23(c)(1)(A) instructs courts to consider class certification at "an early practicable time," defendants in class actions may mount an individual defense on the merits when appropriate. *See Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 846 (7th Cir. 2017). Here, it is appropriate to consider the motion to dismiss before launching into resource-intensive discovery on the propriety of class certification.

[3]R. 25-1 includes the Franchise Agreement and all its constituent exhibits and amendments. This Opinion uses the PDF file page numbers to point to the relevant pages even though most of the exhibits and the Entity Franchisee Amendment have their own pagination.

Despite the franchise agreement, Patel argues that he is nothing more than a glorified manager—and thus an employee under the Act—of his 7-Eleven store. For example, 7-Eleven controls his working hours, Compl. ¶ 16, his store workers' uniforms, *id.* ¶ 15, the types of payments his store can accept from customers, *id.* ¶ 17, and even the temperature in the store, *id.* 7-Eleven also controls the payroll system: store employees log their working hours in 7-Eleven's system, and 7-Eleven cuts their paychecks. *Id.*

Patel's own financial arrangement with 7-Eleven works like this: Patel is required to deposit daily revenues into an account controlled by 7-Eleven. *See* Compl. ¶ 18. 7-Eleven requires Patel "to keep a certain amount of funds in the account at all times or risk getting written up by 7-Eleven." *Id.* 7-Eleven "deducts payments towards 'franchise' fees, payments for store maintenance, credit card fees, advertising fees, payroll taxes for the store's employees, and the like" from the account. *Id.* ¶ 22. Patel's withdrawals from the account are limited. He is only allowed to withdraw an "allotted [] standard 'draw,'" and if he wants to withdraw anything more, he must request permission from 7-Eleven. *Id.* ¶ 18. The franchise agreement states that the default standard draw from the account will be $0.00 per week. Mot. Dismiss Exh. A, Franchise Agmt. at 58.

Patel also alleges that, in October 2018, shortly after the complaint in this case was served on 7-Eleven, "a representative of 7-Eleven visited Patel's store" and removed a surveillance video recording device from the store. Mot. Prelim. Inj. at 2. Further, in November 2018, a 7-Eleven representative inspected Patel's store and

3

found two expired fountain drink syrups being used in the store. *Id.* at 3. Patel corrected the issue but received a "Letter of Notification" from 7-Eleven about it around one week later. *Id.*; R. 18-1, Patel Aff. at 6-7 (attaching the November 19, 2018 "Letter of Notification"). 7-Eleven has pointed out, and Patel concedes, that Patel had received similar letters before the filing of the complaint. R. 29, Prelim. Inj. Resp. at 3; R. 32, Prelim. Inj. Reply at 3 n.2.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

7-Eleven's motion to dismiss consists of two main arguments. 7-Eleven's primary argument is that Patel has failed to adequately plead an agreement by 7-Eleven to pay him "wages" under the Act. Mot. Dismiss Br. at 6-9. Pleading a claim under the IWCPA requires a plaintiff to allege that compensation is due to him "as an employee from an employer under an employment contract or agreement." *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005). The IWPCA defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the [two] parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS § 115/2. An agreement to pay wages need not amount to a valid written contract—it can be informal. *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 672 (Ill. App. Ct. 2004) ("The Act provides an employee with remedies more expansive than a common law breach of contract action when it uses the words 'employment contract or agreement.' … To require an employee to have a valid, enforceable contract before invoking the Act would render the Act surplusage.") (cleaned up). Nevertheless, the IWPCA authorizes claims only for the enforcement of an *already*-existing agreement.

5

The Act does not create new rights and obligations between the parties: it "provides no substantive relief beyond what the underlying employment contract requires." *Enger v. Chi. Carriage Corp.*, 812 F.3d 565, 570 (7th Cir. 2016). If there is no agreement to pay wages or compensation, then there is no valid IWPCA claim. So although Patel's claim is that 7-Eleven took improper deductions from his wages, Compl. ¶¶ 3, 22, 28; *see also* 820 ILCS § 115/9, the Act requires that there be "wages" owed in the first place in order to pursue a claim under the Act.

The complaint in this case does not successfully allege that 7-Eleven agreed to pay wages to Patel. None of Patel's arguments to the contrary is convincing. First, Patel argues that the profit-split arrangement in the franchise agreement constitutes an agreement to pay wages. Pl.'s Resp. at 4-5 ("While the franchise agreement characterizes this as a charge that Plaintiff must pay to 7-Eleven … the Complaint alleges, and the franchise agreement confirms, that it is 7-Eleven that has complete control over all financial accounts, including over money Plaintiff 'owes' to 7-Eleven."). It is not clear whether the complaint ever refers specifically to the profit-split arrangement, though Paragraph 22 mentions that 7-Eleven deducts "'franchise' fees" from the store account, Compl. ¶ 22, and the franchise agreement is central to the allegations in the complaint (so it may be considered during the dismissal-motion stage). In his briefing—though not in the complaint itself—Patel explains that the share of the store profits due to 7-Eleven is called the "7-Eleven Charge." Pl.'s Resp. at 4 (citing Mot. Dismiss Exh. A, Franchise Agmt. at 61) ("Schedule D of the franchise agreement … explains the profit split between Plaintiff and 7-Eleven, known as the

6

'7-Eleven Charge.' The 7-Eleven Charge varies depending on the store profits but is generally approximately 50%."). 7-Eleven seems to agree with that characterization of the profit-sharing arrangement. Def.'s Br. at 4 ("[F]ranchisees like Shanti 11 pay 7-Eleven certain fees, including a royalty fee called the 7-Eleven Charge, which is a graduated percentage of the gross profits of the store.").

Patel's argument is that the profit he receives from the store account when he draws on it, as described in Paragraph 18 of the complaint, constitutes his "wages" from 7-Eleven. The fact that the funds are funneled through an account controlled by 7-Eleven, Patel reasons, is proof of this. Pl.'s Resp. at 4-5. But Patel's argument conflicts with the Seventh Circuit's reasoning in *Enger v. Chicago Carriage Cab Corp*. In that case, the plaintiff taxi drivers alleged that the fares paid by passengers but "processed by the taxi company's credit card processing service" were really wages paid to the drivers. 812 F.3d at 570. The Seventh Circuit disagreed, in part because even in that scenario, in which the fares were transferred back to the drivers from the company's credit card processor, "the obligation to pay the driver ar[ose] from the *passenger*, and not the taxi company." *Id*. (emphasis added). The transfers of the fares back to the taxi driver, the Seventh Circuit held, did not constitute wages. *Id*. The same reasoning applies here. Just as taxi fares originate with the passengers, Patel's 7-Eleven store's revenues are paid by its *customers*. If no one made a purchase at the store in a given timeframe, then 7-Eleven would not be obligated to let Patel draw down any amount from the store account for that period. The default weekly draw amount of $0.00 listed in the franchise agreement supports that. *See* Mot. Dismiss

7

Exh. A, Franchise Agmt. at 58. And in any case, if the store failed to make any sales there would be nothing in the account *to* draw down, as it is Patel who deposits revenue into the account in the first place. Compl. ¶ 18. That is not a wage-payment arrangement.

Patel also argues that Paragraph 17 of his complaint alleges an agreement to pay wages. Pl.'s Resp. at 4. That paragraph asserts that "7-Eleven controls the entire payroll system at the stores" and that "[e]mployees at the store enter their hours into *7-Eleven's* system, and it is 7-Eleven that calculates payroll and issues checks, not the franchisees." Compl. ¶ 17 (emphasis in original). As 7-Eleven points out, it is not clear whether Paragraph 17 should be read to describe payments to Patel, or whether it only describes how *other* store employees are paid. Def.'s Br. at 9 n.7; R. 33, Def.'s Reply at 3 n.2. In any case, even if the payroll checks that Patel describes are being paid to him or Shanti 11 as well as to others, those payments still are not wages under *Enger*. So Patel has failed to plead that 7-Eleven—either formally or informally—agreed to pay him wages.

7-Eleven's second argument is that Patel cannot bring a claim under the IWPCA because he "is not a party to any franchise agreement with 7-Eleven." Def.'s Br. at 10-12. 7-Eleven points out that Shanti 11—Patel's corporation—and 7-Eleven are the only parties to the franchise agreement under the Entity Franchise Amendment and argues that Shanti 11 *cannot* bring a claim under the IWPCA because it is not an "individual" as defined by the Act. *Id*. This argument disregards the possibility that there is an additional, informal agreement between 7-Eleven and

8

Patel. Even if *Shanti 11* cannot qualify as an employee under the IWPCA (an argument 7-Eleven stresses in an attempt to distinguish *Johnson v. Diakon Logs.*, 2018 WL 1519157, at *8-9 (N.D. Ill. Mar. 28, 2018), *see* Def.'s Reply at 7-8), Patel might still be able to make an argument that *he* is 7-Eleven's employee. Patel's entire misclassification argument seems to be based upon exactly that possibility: that his relationship with 7-Eleven on paper—as the sole owner of the store's franchisee—does not capture the reality of his working situation. *See, e.g.*, Compl. ¶¶ 11-22. The fact that 7-Eleven has a written franchise agreement with Shanti 11 does not preclude the possibility that it also has an employment relationship with Patel. *See Johnson*, 2018 WL 1519157, at *9 (explaining a similar situation: "It might be that the parties settled on an option of having [] payments going through the company that [the plaintiffs] owned. But at the pleading stage, [the defendant's] argument that its agreement with an entity that [the plaintiff] owned precludes [the plaintiff's] claims under the IWPCA is not a winning one."); *Ware v. Indus. Comm'n*, 743 N.E.2d 579, 585-87 (Ill. App. Ct. 2000) (finding that the plaintiff was an employee and not an independent contractor where, among other factors, "[e]ven though [he] had incorporated, he had no customers of his own. He worked exclusively for Superior, served customers designated by Superior, and was paid a percentage of what Superior received from these customers."). The Court is not aware of any law creating a hard-and-fast rule that prohibits a franchisee corporation's sole owner from qualifying as an employee of the franchisor under the IWPCA. If Patel believes—and has facts to support—that Shanti 11 is a sham corporation, or that he has an employment

9

agreement with 7-Eleven distinct from Shanti 11's franchise agreement with 7-Eleven, then he should amend the complaint to reflect those allegations. (It is not at all clear that he can do this, but the possibility is there.)

The bottom line is that Patel has failed to plead any agreement to pay wages—formal or informal—between himself or 7-Eleven, so his IWPCA claim must be dismissed. But because this is Patel's first complaint, the dismissal is without prejudice for now. If Patel is going to file an amended complaint, then it must be filed by August 26, 2019. If no amended complaint is filed by that deadline, then the dismissal will convert to a dismissal with prejudice and the case will be dismissed.

As for Patel's motion for a preliminary injunction, R. 18, it must be denied because there is no longer an operative complaint. Because there is no complaint (for the reasons described above), there can be no likelihood of success. And, in any event, there does not appear to be any need for the extraordinary remedy of interim relief given all of the steps that must occur before the termination of a franchise is actually effectuated.

## IV. Conclusion

For the reasons explained above, 7-Eleven's motion to dismiss, R. 24, is granted without prejudice to an amended complaint. Any amended complaint is due by August 26, 2019. Patel's motion for a preliminary injunction, R. 18, is denied. The status hearing of September 4, 2019 remains in place.

ENTERED:

     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 5, 2019