IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NIRAL PATEL, individually and on behalf of all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**7-ELEVEN, INC.,**<br><br>Defendant. | Case No. 18-cv-07010<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiff Niral Patel, on behalf of himself and a proposed class of 7-Eleven franchisees, alleges Defendant 7-Eleven, Inc. violated the Illinois Wage Payment and Collection Act, 820 ILCS § 115, *et seq*. Before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) [47]. For the following reasons, Defendant's motion is granted.

### BACKGROUND

The following facts are alleged in Patel's First Amended Complaint ("FAC") and are presumed true for the purpose of resolving the present motion.[1] In 2010, Patel purchased a 7-Eleven franchise in Illinois through his solely owned and operated corporation Shanti 11, Inc. (Dkt. 43 at ¶5). The relationship between 7-

---

[1] The Court also considers the text of the underlying franchise agreement between Plaintiff's corporation and Defendant. (Dkt. 25-1). Although the agreement is not attached to the FAC, the Court may consider its contents without converting the motion to dismiss into one for summary judgment because the agreement is referenced in the FAC and central to Plaintiff's claims. *Mueller v. Apple Leisure Corp.,* 880 F.3d 890, 895 (7th Cir. 2018).

1

Eleven and its franchisees is governed by a franchise agreement under which 7-Eleven and the franchisee agree to split the profit from the franchisee's store. (*Id.* at ¶¶11; 19). The share of profit from the franchisee's store due to 7-Eleven is known as the "7-Eleven Charge." (*Id.* at ¶19). The profit split between Patel and 7-Eleven depends on the amount of gross profit but is approximately 50% (*Id.* at ¶20).

Patel claims that despite the formal franchisor-franchisee relationship, in practice, the agreement operates to create an employer-employee relationship. (*Id.* at ¶¶11-12). For example, franchisees must deposit daily revenues into an account controlled by 7-Eleven. (*Id.* at ¶18). From this account, 7-Eleven deducts its 7-Eleven Charge and franchise-related fees before paying the franchisee his portion of the profit. (*Id.* at ¶20). Thus, Patel alleges that although "[t]he franchise agreement describes the 7-Eleven Charge as a payment 'owed' by Plaintiff to 7-Eleven … in reality, it is 7-Eleven that controls all of the financial accounts and draws payments to itself and to Plaintiff and other franchisees." (*Id.*). According to the FAC, the financial relationship is essentially entirely controlled by 7-Eleven. For instance, franchisees are not free to use or withdraw funds from their store accounts at their own discretion; rather, 7-Eleven allots them a standard draw amount. (*Id.* at¶18). Patel's standard weekly draw amount is $0.00. (*Id.*)

7-Eleven also exacts significant control over the day-to day operations of franchisees' stores. It controls store operating hours, store employee training and uniforms, the types of payments stores can accept from customers, and even the store temperature. (*Id.* at ¶¶15-16). 7-Eleven also controls the payroll system: store

2

employees log their working hours into 7-Eleven's system and 7-Eleven issues their paychecks. (*Id.* at ¶17).

Patel filed the current suit on October 18, 2018 pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115, *et seq.* alleging that he is in reality a 7-Eleven employee under the Act and that 7-Eleven violated the Act by taking improper deduction from his wages in the form of franchise fees and other fees due under the franchise agreement. On August 5, 2019, the Court dismissed Plaintiff's complaint against 7-Eleven without prejudice. *Patel v. 7-Eleven, Inc.*, No. 18 C 07010, 2019 WL 3554438, at *3 (N.D. Ill. Aug. 5, 2019). Patel subsequently filed the First Amended Complaint presently at issue.

## **LEGAL STANDARDS**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). Dismissal for failure to state a claim is proper

3

"when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007).

## ANALYSIS

The IWPCA "provide[s] employees with a cause of action [against employers] for the timely and complete payment of earned wages" and "prohibits employers from taking [unauthorized] deductions from employees' wages …." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (internal quotations omitted). Wages are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the two parties whether the amount is determined on a tie, task, piece, or any other basis of calculation." 820 ILCS §115/2. The IWPCA "does not provide an independent right to payment of wages and benefits; instead, it only enforces the terms of an existing contract or agreement." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012).

7-Eleven argues that Patel has failed to plead the existence of an agreement with 7-Eleven to pay him wages, and so, the FAC must be dismissed. Patel previously argued that the franchise agreement between Shanti 11 and 7-Eleven constitutes an agreement to pay wages. Because Patel deposits daily revenues in an account controlled by 7-Eleven and because 7-Eleven distributes Patel's portion of the profit from this account after deducting franchise fees, Patel argued that the 7-Eleven Charge operates as a payment of wages to him by 7-Eleven and that the fees constitute improper deductions. *Patel*, 2019 WL 3554438, at *3. In dismissing Patel's

4

original complaint, the Court relied on the Seventh Circuit's reasoning in *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016). In *Enger,* the court determined that taxi fares paid by credit card and processed by the taxi company before being remitted to taxi drivers did not constitute wages within the meaning of the IWPCA because "the fact that payment sometimes flows through defendants does not alter the reality that the obligation to pay the driver arises from the passenger, and not the taxi company." *Id.* In this situation, "the taxi company is nothing more than an intermediary, and it is inaccurate to characterize any remittance from defendants as a wage." *Id.* By analogy, this Court reasoned that "[j]ust as taxi fares originate with the passengers, Patel's 7-Eleven store's revenues are paid by its *customers. See Patel*, 2019 WL 3554438, at \*3 (emphasis in original). The fact that these payments are funneled into an account controlled by 7-Eleven before Patel's portion is transferred to him does not render the payment "wages" under the IWPCA. *Id.*

Although the Court rejected Patel's argument that the franchise agreement is an agreement to pay wages, Patel relies on the same argument now, arguing that the Court misapplied *Enger*.[2] Patel asserts that the Court "conflat[ed] the *origin* of the

---

[2] Patel's "new" allegations are facts or arguments already considered by the Court in dismissing the original complaint. Essentially Patel asks the Court to reconsider the previous ruling. Such an action is highly disfavored under the law of the case doctrine, which "embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). It is particularly important to adhere to such a rule when, as here, a case is reassigned from one judge to another. *Id.* ("In situations where a different member of the same court re-examines a prior ruling, the law of the case doctrine ... reflects the rightful expectation of litigants that a

5

funds ... with the *obligation* to make the payment" and that "the key inquiry under *Enger* ... is not the 'origin point' of the payment, but rather, which party bears the obligation to pay the Plaintiff." (Dkt. 53 at 9-10) (emphasis in original). While the obligation to pay taxi drivers, either directly in cash or indirectly by credit card (and processed through the cab company), arose from passengers, Patel argues that the obligation to pay him arises from 7-Eleven because it controls store revenues and is the sole entity that pays franchisees their share of the profit. [3]

It is Patel who conflates the concepts of origin and obligation. Patel is correct that under the franchise agreement 7-Eleven is obligated to pay him. Certainly, even the cab company in *Enger* had an obligation to pay back credit card taxi fares to its drivers. But, as this Court previously observed, in both instances, the company's obligation to pay the plaintiff arose from—*i.e.* originated from—the passengers or customers. Just as the amount of money the cab company had to remit to taxi drivers was determined by the amount a passenger spent on a ride, the amount of profit 7-Eleven is obliged to pay Patel is determined by the amount customers spend at his store. (*See* Dkt. 25-1 at 61, Schedule D). If no one made a purchase at the store there

---

change of judges midway through a case will not mean going back to square one.") (internal quotations omitted).

[3] Relatedly, Patel asserts that unlike the cab company in *Enger*, 7-Eleven is not a mere intermediary:"[W]hile the amount of the franchisees' compensation does depend on revenue from customers, it is 7-Eleven that decides how to allocate the revenues—from company-controlled accounts—between the company and franchisees." (Dkt. 53 at 7). But the Franchise Agreement dictates how profits will be distributed: the allocation of profits is determined by the gross revenue from customer sales. (*See* Dkt. 25-1 at 61, Schedule D). Patel may rightly feel the Franchise Agreement is unfair, but that does not turn it into an agreement to pay wages pursuant to the IWPCA.

would be no profit to split, and consequently, no obligation for 7-Eleven to remit payment to Patel. Due to the dependency on customer sales, this Court concluded that what 7-Eleven is obligated to pay Patel under the franchise agreement is not a wage. *See Patel*, 2019 WL 3554438, at \*3. [4]

Thus, although Patel has alleged (convincingly) that 7-Eleven exerts far more control over the financial arrangement between itself and its franchisees than the cab company in *Enger*, that distinction does not render *Enger* inapplicable. In *Enger*, the Seventh Circuit observed that "the parties' employment agreement did not obligate defendants to compensate the drivers—it only required defendants to make their cabs and medallions available to the drivers so that they could collect tips and fares from *passengers*." 812 F. 3d at 569 (emphasis in original). The Court rejected the cab drivers' attempt to recharacterize fares as wages simply because they were issued by the cab company. *Id.* at 570 ("[T]he IWPCA exists to hold the employer to his promise under the employment agreement; by asking the judiciary to graft new terms into an employment contract without employer's consent, the drivers turn the IWPCA on its head.").

In the same manner, the Court is unpersuaded by Patel's attempt to recharacterize a profit-sharing arrangement spelled out in a franchise agreement as

---

[4] Patel cites to paragraph 11 of the franchise agreement with 7-Eleven which states that 7-Eleven "agree[s] to … pay to you [Patel] every week an amount equal to the Weekly Draw indicated in Exhibit D… ." (Dkt. 25-1 at 14, ¶11). Patel argues that this language gives rise to an obligation for 7-Eleven to compensate Patel beyond profits. But the agreement provides Patel's weekly draw is $0.00. (*Id.* at 58, Exhibit D ¶(h)). Thus, under the agreement 7-Eleven does not have an obligation to pay Patel anything other than his share of profit.

7

an agreement to pay wages because Patel's cut of the profit is issued by 7-Eleven. In consideration for being allowed to own and operate a store under 7-Eleven's brand, Patel agreed to share profits with 7-Eleven, which are dependent on the amount of customer sales. (Dkt. 25-1 at 13 §10(a); 59, Exhibit D; 61, Schedule D). That is not a wage-payment arrangement.

In light of *Enger* and this Court's previous ruling, the Court is unable to characterize the franchise agreement as a wage agreement. Because Patel has failed to allege the existence of an agreement to pay wages, the FAC must be dismissed. [5]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Because Patel already had an opportunity to amend his complaint to cure the *same* deficiency and was unable to do so, the Court does not believe Patel will be able to allege that he was owed wages. Thus, the Court dismisses the FAC with prejudice.

E N T E R:

Dated: June 18, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[5] Because Patel has failed to allege the existence of an agreement to pay wages, the Court declines to consider 7-Eleven's argument that the FAC must also be dismissed because Patel fails to allege a distinct employment relationship with 7-Eleven.